DECISION
{¶ 1} Relator, The Cincinnati Enquirer, a division of Gannett Satellite Information Network, Inc., has filed this original action in mandamus seeking an order directing respondents, the city of Cincinnati and the Commissioner and Assistant Health Commissioner of the Cincinnati Health Department, to provide, pursuant to a written request, "copies of the 343 lead citations and any others that were issued between 1994 and the present that we discussed during Monday's meeting. Please include the date of the citation, the person who was cited, their address, age and the address of the property they own that is contaminated with lead. Also, I would like to know if the family living at the residence contaminated with lead was referred to the city's relocation office." A blank copy of the form used as the health department's lead-contamination notice to property owners has been provided with the complaint, and it reads, in pertinent part, "To Property Owner: On DATE the Cincinnati Health Department investigated a residential unit located at ADDRESS; the title of which is in your name. This unit has been reported to our department as the residence of a child whose blood test indicates an elevated lead level."
 {¶ 2} The parties have stipulated to the record, and, among other things, the respondents have filed a motion for summary judgment. Respondents have declined to release the requested information based on R.C. 149.43, Ohio's Public Records Act, and the federal Health Insurance Portability Accountability Act ("HIPAA"). Recognizing the importance of the privacy of medical records, Congress enacted HIPAA in 1996.[1] The competing interests to be resolved, as argued by the parties, are access to public records — in this case, investigative reports prepared by the Cincinnati Health Department concerning possible lead contamination of property — and the health department's responsibility to ensure that a citizen's medical information, when voluntarily provided and apparently included as part of a lead-investigation report, remains private. Without a case factually on point, our review of Ohio decisions reveals that holdings concerning the privacy of personal information seem driven, to a great degree, by the unique factual circumstances of each case, and by whether a redaction of personal information is feasible, thus permitting release of the public record.
 {¶ 3} An illustrative case involving the balancing of the competing interests is the Ohio Supreme Court's decision in State ex rel. McClearyv. Roberts,[2] as discussed by the court in its later decision in Stateex rel. Beacon Journal Publishing Co. v. Bond.[3] "In McCleary, the city of Columbus implemented a photo identification program requiring parents of children who used Columbus pools to provide the Recreation and Parks Department with personal information regarding their children. Holding that such information was not subject to disclosure, we observed that `standing alone, that information, i.e., names of children, home addresses, names of parents and guardians, and medical information, does nothing to document any aspect of the City's Recreation and Parks Department.'"[4] Nevertheless, in McCleary, Justice Cook, concurring in part and dissenting in part, agreed that names, addresses, phone numbers, family information, and medical information of the children registered in the city's identification database were exempt from disclosure, but was not convinced that the entire contents of the city's electronic database should have been exempt from disclosure.[5] While the Ohio Supreme Court recognizes the possibility of redaction, it also emphasizes that any balancing of competing concerns for the public's right to know and a citizen's right to keep private certain information that has become part of the records of public offices belongs to the Ohio General Assembly, and that this balancing can be seen in the numerous statutory exceptions to disclosure found in R.C. 149.43.[6]
 {¶ 4} To the extent that it is also claimed that HIPAA is implicated, the controversy before this court becomes one of first impression as well. HIPAA's impact upon the privacy of personal medical information is considerable and is manifested in surprising ways.[7] Nevertheless, we conclude that it is of little import to our decision in this case because even if HIPAA permitted disclosure of the unredacted public record, which is highly doubtful absent consent by the individual whose medical information is included in the requested public record, R.C. 149.43 would not permit disclosure of such an unredacted record. HIPAA is a complex piece of federal legislation that addresses the exchange of health-related information. As set out in the HIPAA regulations promulgated by the Secretary of Health and Human Services in accordance with the agency's rulemaking authority, HIPAA will not preempt state law where state law is more stringent concerning the disclosure and use of individually identifiable health information.[8] Pursuant to HIPAA regulations, there is a comprehensive listing of items bearing upon whether records contain identifiable health information, including, names, addresses, telephone numbers, all elements of dates relating directly to an individual, such as birth dates, medical record numbers, photographs of individuals, and electronic mail addresses.[9]
 {¶ 5} To be entitled to a writ of mandamus, the relator must generally demonstrate the following: (1) a clear legal right to the relief requested; (2) that the respondent is under a clear legal duty to perform the act requested; and (3) that the relator has no plain and adequate remedy in the ordinary course of the law. Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act, which authorizes actions against persons responsible for custody and control over requested public records.[10] A mandamus action may be commenced in the appropriate court of appeals.[11] The Ohio Supreme Court has held that while mandamus is the proper remedy to compel compliance with the Public Records Act, "persons requesting records under R.C. 149.43(C) need not establish the lack of an alternative, adequate legal remedy in order to be entitled to the writ."[12] R.C. 149.43 must also be construed liberally in favor of broad access to records kept by public offices, and any doubt is to be resolved in favor of disclosure of the records.[13]
 {¶ 6} Before addressing the availability of public records, the Ohio Revised Code defines a public office, pursuant to R.C. 149.011(A), as "any state agency, public institution, political subdivision, or any other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." A public official, pursuant to R.C. 149.011(D), is defined as "all officers, employees, or duly authorized representatives or agents of a public office." Records, pursuant to R.C. 149.011(G), are defined as "any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."
 {¶ 7} Concerning the availability of public records, pursuant to R.C.149.43 (A)(1), a public record "means any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except that `public record' does not mean any of the following: (a) Medical records * * * (v) Records the release of which is prohibited by state or federal law." R.C.149.43(A)(3) defines a medical record as "any document or combination of documents * * * that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment." Exceptions to disclosure are strictly construed against the custodian of a public record, and the burden to establish an exception is on the custodian.[14]
 {¶ 8} We observe preliminarily that we have been unable to find in the record any discussion among the parties about reaching some agreement to release the requested health department records after a redaction of the personal medical information that gave rise to a lead-contamination investigation and that was apparently included in the subsequent health department report. The Ohio Supreme Court has already held that exempt information can be redacted from nonexempt records so that the nonexempt portions remain subject to disclosure.[15] Had the health department's investigative report contained no clearly personal medical information about a citizen, or if that citizen knowingly and voluntarily waived his right to keep the medical information private, then our decision in this case would differ from our holding today, that a writ of mandamus cannot be issued on the record before us.
 {¶ 9} "The Cincinnati Health Department provides many services to the community such as medical and dental care; inspections required under Cincinnati Municipal Code, Ohio Revised Code, and Board of Health Regulations * * *."[16] Thus, we hold that the lead-investigation reports are public records generated as a result of the health department's mission in the community. But we are persuaded that the respondents have met their burden of showing an exception to disclosure because of the reference to blood test results for children currently residing at particular addresses. We recognize that the Ohio Supreme Court has stated that, to constitute an exempted medical record, the record must pertain to a medical diagnosis and be generated and maintained in the process of medical treatment,[17] but because even the dissent in McCleary agreed that children's names, addresses, and medical information included in the city database qualified as exceptions to disclosure, we similarly hold that the contents of the leadinvestigation reports in this case, absent redaction or waiver with regard to blood tests, dictate nondisclosure of the requested records at this time.
 {¶ 10} As the Cincinnati Enquirer is not the prevailing party, it is not entitled to attorney fees in this case, and its request for fees is accordingly denied. As a final observation in denying the writ, we are not persuaded that a family perhaps already traumatized by being informed that their child has elevated, perhaps dangerous, levels of lead in his blood, or whose child is currently in treatment to remedy dangerous lead levels, should have to deal with the additional burden of media exposure because of their child's blood test results included in a public record. The relator's request for a writ of mandamus is, therefore, denied.
Writ denied.
Hildebrandt and Gorman, JJ., concur.
[1] Pub.L. No. 104-191, 110 Stat. 1936.
[2] 88 Ohio St.3d 365, 2000-Ohio-345, 725 N.E.2d 1144.
[3] 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180.
[4] Id. at ¶ 10.
[5] See State ex rel. McCleary v. Roberts, 88 Ohio St.3d 365, 374,2000-Ohio-345, 725 N.E.2d 1144.
[6] See State ex rel. WBNS TV, Inc. v. Dues, 101 Ohio St.3d 406, 412,2004-Ohio-1497, 805 N.E.2d 1116, at ¶ 36.
[7] See Whitehouse, Privacy Rules Snarl Estate Planning, Wall St. Journal (Nov. 16, 2004), at D3 (HIPAA waiver needed before person named in a springing power of attorney has right to talk to one's physician and to have access to one's medical records); see, also, Sections 508, 510, and 512, Title 45, C.F.R.
[8] See Sections 160.202 and 160.203, Title 45, C.F.R.
[9] See Section 164.514(b)(2)(i), Title 45, C.F.R.
[10] See State ex rel. Cincinnati Enquirer v. Dupuis, 98 Ohio St.3d 126,129, 2002-Ohio-7041, 781 N.E.2d 163, at ¶ 11; State ex rel. Highlanderv. Rudduck, 103 Ohio St.3d 370, 372, 2004-Ohio-4952, 186 N.E.2d 213, at ¶ 14.
[11] See R.C. 149.43(C).
[12] State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio EnvironmentalProtection Agency (2000), 88 Ohio St.3d 166, 171, 724 N.E.2d 411; seeState ex rel. Miami Valley Broadcasting Corp. v. Davis,158 Ohio App.3d 98, 101, 2004-Ohio-3860, 814 N.E.2d 88, at ¶ 5.
[13] See State ex rel. Beacon Journal Publishing Co. v. Akron, ___ Ohio St.3d ___, 2004-Ohio-6557, ___ N.E.2d ___, at ¶ 23; State ex rel.Cincinnati Enquirer v. Dupuis, supra; State ex rel. Wallace v. StateMed. Bd. of Ohio, 89 Ohio St.3d 431, 433, 2000-Ohio-213, 732 N.E.2d 960.
[14] See State ex rel. Thomas v. Ohio State Univ., 71 Ohio St.3d 245,1994-Ohio-261, 643 N.E.2d 126.
[15] See State ex rel. McCleary v. Roberts, 88 Ohio St.3d 365, 374,2000-Ohio-345, 725 N.E.2d 1144 (Cook, J., concurring in part and dissenting in part); Franklin Cty. Sheriff's Dept. v. State Emp.Relations Bd. (1992), 63 Ohio St.3d 498, 589 N.E.2d 24, paragraph one of the syllabus; see, also, State ex rel. Beacon Journal Publishing Co. v.Akron, ___ Ohio St.3d ___, 2004-Ohio-6557, ___ N.E.2d ___, at ¶ 52 and 55-56.
[16] See Supplemental Memorandum in Support of Complaint for Writ of Mandamus, Exhibit 2.
[17] See State ex rel. Strothers v. Wertheim, 80 Ohio St.3d 155, 158,1997-Ohio-349, 684 N.E.2d 1239.